IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENNETT ROIZ,<br><br>        Plaintiff,<br><br>    vs.<br><br>JO ANNE BARNART,<br>Commissioner of Social Security,<br><br>        Defendant.<br>_____/ | CASE NO. CV-F-04-5937 LJO<br><br>**MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION** (Doc. 17) |

Plaintiff Bennett Roiz ("claimant") seeks judicial review of an administrative decision denying his claim for Disability Insurance Benefits under the Social Security Act, Title II ("Act"). Pursuant to 28 U.S.C. § 636( c) and Fed.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate Judge, and by a November 23, 2004 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all further proceedings. Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

Claimant filed his complaint on July 6, 2004 and his opening brief on June 27, 2005. The Commissioner filed her opposition to the appeal on October 4, 2005. Claimant did not file a reply brief.

## BACKGROUND

### Administrative Proceedings

Claimant filed an application for Disability Insurance Benefits under the Social Security Act on October 20, 1999. (Administrative Record "AR" 110-112.) He alleges a disability onset of December

1

June 13, 1997 due to a spinal cord injury. (AR 110, 119-120 .) Claimant's application for benefits was denied and denied upon reconsideration. (AR 111-114, 116-119.) Claimant's application was further denied by an Administrative Law Judge ("ALJ") in a decision issued on July 24, 2003. (AR 15-25.) The Appeals Council denied review. (AR 4-6.) Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

## Claimant's Background and Work Experience

Claimant was born on December 29, 1961. He completed the twelve grade. (AR 45.) His past relevant work is machine repair, manufacturing and as a warehouse person. (AR 45.)

## Medical History

The pertinent medical history is summarized as follows.

Claimant was treated at Doctors Medical Center from August 11, 1997 to November 20, 2001. (AR 158-245, 322-374.) Claimant was injured in 1997 when he fell 21 feet and fractured his back. Lumbar laminectomy was performed. Claimant received acupuncture treatment and pain medication. On March 8, 1999, claimant's treating physician, Patrick Rhoades, M.D. reported claimant's complaint of severe back pain. (AR 227.) On examination, claimant had decreased range of motion in extension, lateral rotation and lateral bending. Straight let raising was positive for back pain only. (AR 227.) He was prescribed medication and recommended to continue his exercise program. (AR 227.) On May 17, 1999, claimant was examined by Dr. Rhoades who noted a decreased range of motion in all planes of movement and tenderness at the paraspinal and lateral lumbar areas; and claimant had antalgic gait. (AR 164.) Antalgic gait continued to December 2000. (AR 336.) Dr. Rhoades recommended modified work and sixteen visits of water therapy two times a week. (AR 164.) Into November 2001, clamant continued to have leg spasms. (AR 322-323.) In July 2001 claimant was "just mildly tender" into the lumbar paraspinal muscles. (AR 328.)

On March 21, 1999, claimant appeared for a comprehensive internal medicine examination by Usaman Ali, M.D. (AR 135.) Claimant complained of the back injury, and pain his back, anal area and tailbone. He also complained of numbness, tingling and muscle spasms in his legs. (AR 135.) He stated he used medications which slightly relieve pain and he uses a TENS unit. (AR 135.) After examination, Dr. Ali diagnosed back injury and history of alcohol abuse. (AR 137.) Dr. Ali functionally

assessed calimant as able to lift and carry 20 pounds; stand and walk with breaks every one hour; sit with breaks every 2 hours; difficulty in balancing, climbing and repeated bending, stooping and crouching. (AR 137.)

On April 8, 1999, state agency physician, Elpidio Fonte, M.D., completed the Physical Residual Functional Capacity Assessment. (AR 138-145.) He assessed claimant as able to lift 20 pounds occasionally and 10 pounds frequently, sit/stand/walk 6 hours in an eight hour workday. (AR 139.) Dr. Fonte opined that claimant could occasionally climb, banlance, stoop, kneel, crouch and crawl. (AR 140.)

Claimant was treated at Hill Family Chiropractic from March 16, 1999 to June 22, 1999. (AR 148-158.) He was treated for leg cramps, back pain.

Claimant was seen by Dr. Chopra for a pulmonary follow up on November 4, 1998, January 5, 1999, March 2, 1999, August 24, 2000, January 3, 2001 and May 14, 2001. (AR 294-306.) A review of systems was unremarkable. (AR 294.) Dr. Chopra's impression was bronchospastic airway disease with possible pulmonary infection and pneumonia. (AR 294.) He was prescribed medication and inhaler. (AR 294.)

On July 6, 1999, claimant was seen for a follow up pulmonary exam with Sawtantra Chopra, M.D. (AR 247.) Claimant had developed recurrent pulmonary infection, bronchospactic airway disease and respiratory insufficiency. (AR 247.) Claimant also reported chest pains. (AR 247.) Cardiac examination was unremarkable. Dr. Chopra's opinion was allergic bronchitis with bronchospastic airway disease and possible angina. (AR 247.) Claimant was given medication for his chest pain and an inhaler. (AR 248.) In a follow up on August 31, 1999, claimant's possible angina was stable and improved and he was continued on his inhaler. (AR 250.)

In a pulmonary follow up with Dr. Chopra on December 1, 1999, claimant had shortness of breath on light exertion and wheezing. (AR 273.) Claimant was given medication and continued to use his inhaler. (AR 273.)

Claimant returned to Hill Family Chiropractic for treatment from August 28, 2001 to October 30, 2001 for low back pain. (AR 316-320.)

Robert Engeln, M.D. performed a consultative examination of claimant on November 5, 1998

and he prepared a supplement report on August 13, 1999. (AR 401.) On examination, lying straight leg raising was negative to 80 degrees and sitting straight leg rasing was negative. (AR 425.) Dr. Engeln states that his back would preclude him from substantial work but that claimant lost 75 percent of his preinjury capacity for performing such activities as bending, lifting, pushing, pulling. (AR 427.) Dr. Engeln opined that claimant was a "qualified injured worker." (AR 427.) In his supplement report, Dr. Engeln opined that claimant could not do heavy work. (AR 401.)

## Hearing Testimony

Claimant testified that he fell off two stories and fractured his elbow and vertebrae. (AR 46.) He continues to have backaches and leg spasms and cramps. (AR 47.) He also previously hurt his right hand. (AR 47.) He also has chronic bronchitis, as a result of his back surgery. (AR 47.) The bronchitis comes and goes. (AR 47.) He drinks 3-4 cases of beer a week. (AR 47.) He rents a room. (AR 48.) He can take care of his personal hygiene, does the dishes, laundry and does light house hold chores, like vacuuming. (AR 48.) He does shopping and light yard work. (AR 49.) He takes his dog for a walk for about a quarter mile. (AR 50.) He drives a car. (AR 50.) He has problems concentrating; he has a short attention span. (AR 50-51.) He has side effects from one medication, which makes him sleepy, so he only takes it at night. (AR 52.) He can walk no more than 15 minutes, stand for an hour and sit for no more than a half hour. (AR 52.) He can sit for 15 minutes, but then has to shift positions. (AR 52.) He cannot lift more than 25 pounds, and has difficulty climbing. (AR 53.) He can stoop, crouch, crawl. (AR 53.) He has trouble making a fist and feeling with the fingers of the right hand, from the right hand injury. (AR 54.) He also says his hip is "a little off angle" due to the fall. (AR 55.) He has leg pain, spasms, achy and some numbness. (AR 56.) His insurance ended, then restarted, and there are certain treatments that did not get authorized, like an orthopedic bed. (AR 58.) He did not see doctors from November 2001 because his treating physician had made mistakes and because he did not have insurance. (AR 59.)

Vocational expert ("VE"), William Wetzel, testified. (AR 60.) The VE testified that claimant's past relevant work was medium and heavy exertion. (AR 62.) In a hypothetical, the VE was asked whether a person limited to sitting, standing and walking to 6 hours in an eight hour day, lifting 10 pounds occasionally and frequently and occasionally climb, balance, stoop, kneel, crouch and crawl and

1 limited in exposure to dust fumes and gases, could perform his past relevant work. (AR 63.) The VE
2 testified that claimant could not perform his past relevant work, but could perform work as an
3 information clerk, charge account clerk, and small parts assembly work. (AR 63.) The available work
4 would not be altered if the hypothetical worker could not do repetitive lifting over 25 pounds or
5 repetitive bending or stooping. (AR 63.) If the hypothetical were further limited in that the person could
6 do no more than occasional use of the right upper extremity for grasping and handling, the VE testified
7 that that would eliminate all work. (AR 64.)

### ALJ Findings

In his July 24, 2004 decision, the ALJ characterized the "primary issue" before him as whether claimant was disabled. (AR 18.) In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 24-25):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in section 216(I) of the Social Security Act and is insured for benefits through June 30, 2000.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's lumbosacral post laminectomy pain syndrome is a severe impairment, based upon the requirements in the Regulations. 20 CFR §404.1521.

4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The ALJ carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairment. 20 CFR §404.1527.

7. The claimant has the following residual functional capacity: he can lift/carry 10 pounds occasionally and frequently. He can sit/stand/walk for 6 hours in an 8 hour workday. He can occasionally climb, stoop, crawl, climb, kneel, crouch and balance. He should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc.

8. The claimant is unable to perform any of his past relevant work. 20 CFR §404.1565.

9. The claimant is a "younger individual." 20 CFR §404.1563.

10. The claimant has a "high school (or a high school equivalent) education." 20 CFR §404.1564.

11. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case. 20 CFR.§404.1568.

12. The claimant has the residual functional capacity to perform a significant range of sedentary work. 20 CFR §416.967.

13. Although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rul 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as information clerk, with 15,000 jobs allowing for a sit/stand option; charge account clerk, with 10,000 jobs; and small parts assembler, with 30,000 jobs.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. 20 CFR §404.1520(f).

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts

from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant contends the ALJ's erred as follows: (1) did not review all of the impairments, (2) erroneously concluded the Listing was not met, (3) found claimant to have capacity to work, (4) rejected claimant's pain complaints, and (5) gave improper hypotheticals to the VE.

## The Sequential Analysis

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled. 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further. 20 C.F.R. §§ 404.1520(a) and 416.920(a). The five-step process is summarized as follows:

1. Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;

2. If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;

3. If the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations;[1] if the claimant does

---

[1] *See* 20 C.F.R. Part 404, Subpt. P, App. 1.

have such an impairment, the claimant is disabled and the analysis ends;[2]

4. If the claimant's impairment is not listed, determination of whether the impairment prevents the claimant from performing his or her past work;[3] if the impairment does not, the claimant is not presumed disabled and the analysis ends; and

5. If the impairment prevents the claimant from performing his or her past work, determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy;[4] if the claimant can, the claimant is not disabled and the analysis ends.

The claimant has the initial burden of proving the existence of a disability within the meaning of the Act. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case of disability by showing that a physical or mental impairment prevents him from engaging in his previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

In this case, claimant convinced the ALJ that he met the criteria in step one of the sequential analysis; that he has not been engaged in substantial gainful employment.

At step two, the ALJ must determine if the impairment is severe. The ALJ determined that the medical evidence establishes severe impairments of lumbosacral post laminectomy pain syndrome. (AR 20.)

Claimant argues that the ALJ did not find any of his other impairments severe. (Opening Brief p. 3.)

The Social Security regulations define severe impairment as an impairment which significantly

---

[2] If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990) (citing *Williams v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Key v. Heckler*, 754 F.2d 1545, 1548) (9th Cir. 1985).

[3] At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity. *Villa v. Heckler,* 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).

[4] At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education and past work experience. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

limits a claimant's "ability to do basic work activities." 20 C.F.R. §§§§ 404.1521, 416.921; *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). "Basic work activities" are defined as including such capabilities as walking/sitting/standing/lifting, 20 C.F.R. § 404.1521(b)(1),(2); understanding, carrying out, and remembering simple instructions, 20 C.F.R. § 404.1521(b)(3); use of judgment, 20 C.F.R. § 404.1521(b)(4); responding appropriately to supervision, co-workers and usual work situations, 20 C.F.R. § 404.1521(b)(5); and dealing with changes in a routine work setting, 20 C.F.R. § 404.1521(b)(6). If the impairment does not significantly limit a claimant's physical or mental ability to do basic work activities, the impairment is not severe. *Bustamante v. Massanari*, 262 F.3d at 955

The mere existence of an impairment is insufficient in and of itself to satisfy a showing that the impairment is so "severe" as to preclude substantial gainful employment. *Sample v. Schweiker*, 694 F.2d 639, 642-43 (9th Cir.1982). The step-two inquiry is a *de minimis* screening device to dispose of groundless claims. *See Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996). If the evidence presented by the claimant presents more than a "slight abnormality," the step-two requirement of "severe" is met, and the sequential evaluation process should continue. *See Smolen v. Chater,* 80 F.3d at 1290. Reasonable doubts on severity are to be resolved in favor of the claimant.

Pursuant to Social Security Rule 85-28:

> "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs. Examples of these are walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. Thus, these basic work factors are inherent in making a determination that an individual does not have a severe medical impairment."

SSR 85-28 further provides "At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities. If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed. "

The ALJ accepted the impairments as noted above as severe, but did not find that the other impairments precluded him from all work. Claimant points specifically to his respiratory condition.

(Opening Brief p. 3.) There is substantial evidence in the record to support the ALJ findings. The medical evidence, here, did not establish the existence of a severe medically determinable impairment. The ALJ identified all the pertinent medical history supportive of a finding of non-severity. Indeed, the ALJ meticulously analyzed the objective medical evidence. (AR 21.)

> "In January 1999, Sawtantra Chopra, M.D. noted that the claimant had been having recurrent episodes of sshortness of breath, wheezing, and tightness in his chest. Dr. Chopra diagnosed the claimant with recurrent bronchitis with an asthmatic component. In August, Dr. Chopra noted that the claimant's allergic bronchitis was stable and improving. In December, Dr. Chopra noted scattered rhonchi and occasional wheezing on examination. An examination in August 2000, Dr. Chopra noted that the claimant was in mild respiratory distress. By January 2001, the claimant had a 'markedly' improved air entry with occasional rhonchi." (AR 21.)

Thus, the ALJ provided a comprehensive outline of the facts and clinical evidence. There was no error in the ALJ rejecting the severity of claimant's respiratory impairment.

**Meeting the Listing**

Claimant argues that the ALJ did not evaluate any listing impairment, including Listing 1.04 (disorders of the spine).[5]

The purpose of the Listings is to describe impairments "severe enough to prevent a person from doing any gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885 (quoting Social Security Ruling (SSR) 83-19, Dept. of Health and Human Services Rulings 90 (Jan. 1983)). If a claimant meets or equals a listed impairment, he/she is disabled. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

A plaintiff's impairment is not considered to be one in the Listing of Impairments merely because it has the diagnosis of a listed impairment; it must also have the findings shown in the listed impairment. 20 C.F.R. §§404.1525(d), 416.925(d). A plaintiff's impairments meet a listed impairment only if the claimant's impairments manifest the specific findings described in the set of medical criteria for the listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885 (1990).

---

[5] New musculoskeletal listings went into effect on February 19, 2002. *See Curran-Kicksey v. Barnhart*, 315 F.3d 964 (8th Cir. 2003). Here, claimant's case resulted in a final administrative decision in July t 2003, which is after listing §1.04 took effect, making the new listing in 1.04 applicable to the case. Claimant does not argue any other Listing.

The musculoskeletal listing of impairment, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04, provides:

> 1.04  Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight- leg raising test (sitting and supine);
>
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.[6]

Among other things, Listing 1.04 requires positive sitting and supine straight leg raising. Negative straight leg raising was noted in the records cited by the claimant. To "meet" a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his/her claim. *Tackett*, 180 F.3d at 1099. Claimant did not meet Listing 1.04

### The ALJ's Finding of Residual Functional Capacity

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can

---

[6] Listing 1.00B2b provides in relevant part: (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.) (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

The Commissioner has final responsibility to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546. "Residual functional capacity" is the phrase used by the Commissioner to denote a claimant's ability to perform work-related tasks despite his physical or mental impairments. 20 C.F.R. §§ 404.1545(a) and 416.945(a). Categories of residual functional capacity include sedentary, light, medium, heavy and very heavy work. 20 C.F.R. §§ 404.1567 and 416.967. In this case, the ALJ found that plaintiff had the residual functional capacity to perform sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

Claimant argues that the ALJ improperly rejected the opinion of treating physician Dr. Rhoades and relied upon the state agency physician's opinion.

Generally, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Ninth Circuit has held that a treating physician's opinion is generally to be afforded great weight in disability cases because he or she ". . . is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987); *see also* 20 C.F.R. §§ 404.1527(d) and 416.927(d). However, a treating physician's opinion is not conclusive as to a claimant's physical condition or the ultimate issue of disability and may be disregarded by the ALJ even where it is not contradicted. 20 C.F.R. § 404.1527(e); *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n. 7 (9th Cir. 1989).

The Ninth Circuit Court of Appeals has established requirements when an ALJ disregards the treating physician's opinion:

> "The ALJ may disregard the treating physician's opinion, but only by setting forth "specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof. *Id.* Furthermore,

the ALJ's reasons for rejecting the doctor's opinion must be "clear and convincing."

*Rodriquez,* 876 F.2d at 762. This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof. *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986); *but see Allen v. Heckler*, 749 F.2d 577, 579-80 (9th Cir.1984) (articulating a narrow exception; where there is a conflict between the findings of the treating and non-treating physicians, and the non-treating physician's opinion is based on a thorough examination and objective clinical tests, findings by the ALJ that the plaintiff is not disabled will be considered supported by substantial evidence).

Here, the ALJ set forth a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof. He reviewed all of the medical evidence from Dr. Rhoades, both favorable and unfavorable to claimant. (AR 21-22.) The ALJ noted the varying degrees of back impairment as time progressed, and stated that he afforded "little weight to Dr. Rhoades opinion as it is not consistent with his own medical notes and the rest of the evidence." (AR 21.) The ALJ further explained this reason:

> "It is interesting to note that back in June 1998, Dr. Rhoades had felt that the claimant was eligible for vocational rehabilitation as the claimant's range of motion was almost full in flexion, 75-90% of normal in extension, mostly full in lateral rotation and lateral bending. He was able to do straight leg raising without difficulty and had minimal pain on palpation." (AR 21.)

Indeed, before claimant's disability insured status ended, Dr. Rhoades' opinions were far less limiting. In June 1998, Dr. Rhoades considered the claimant "eligible for vocational rehabilitation" (AR 374). Dr. Rhoades repeated that opinion in December 1999 (AR 357), January 2000 (AR 354), and June 2000 (AR 343). In April 1999, Dr. Rhoades indicated that the claimant could take computer retraining. (AR 225.) Dr. Rhoades reported that claimant was capable of modified work in May 1999, September 1999, November 1999, and May 2000. (AR 165, 158, 363, 347). In March 2000, Dr. Rhoades considered the claimant's work status to be "continue permanent modifications" rather than to "remain off work." (A.R. 351). A treating physician's opinion is granted controlling weight only if it is well supported by medically acceptable clinical and laboratory diagnostic technique and not inconsistent with the other

substantial evidence in the record. 20 CFR §404.1527 (d)(2) and 416.927(d)(2).

The ALJ then turned to, and relied upon, the opinions of the consultative examination, Dr. Ali, and the state agency physician. (AR138.) Dr. Ali functionally assessed calimant as able to lift and carry 20 pounds; stand and walk with breaks every one hour; sit with breaks every 2 hours; difficulty in balancing, climbing and repeated bending, stooping and crouching. (AR 137.) Dr. Engeln's opinion was consistent with the finding that claimant could perform sedentary work. (AR 401.) Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding examining physician's opinion that claimant could lift and carry 20 to 50 pounds constituted "substantial evidence" in support of ALJ's finding that claimant could perform medium work, where examining physician's opinion was based on results of "his own independent examination"); *Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1984) (holding where examining physician offered opinion, based on "his own neurological examination," that claimant could perform sedentary work, while treating physician opined that claimant was totally disabled, ALJ's finding that claimant could perform sedentary work was supported by "substantial evidence").

### **Claimant's Subjective Complaints**

Claimant argues that the ALJ failed to offer clear and convincing reasons to reject his subjective pain testimony.

A claimant's credibility generally becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective pain statements may tell of greater limitations than can medical evidence alone. Social Security Rule (SSR) 96-7p (1996); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). For this reason, the ALJ may not reject the claimant's statements regarding his limitations merely because they are not supported by objective evidence. *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir.1989). In assessing the claimant's credibility, the ALJ may use "ordinary techniques of credibility evaluation," such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony. *Tonapetyan v. Halter*, 242 F.3d at 1148. The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements. *Fair*

*v. Bowen*, 885 F.2d at 602; *Tonapetyan v. Halter*, 242 F.3d at 1148.  An ALJ may consider the following factors to determine the credibility of a claimant's allegations:

(1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions;

(6) Claimant's daily activities;

(7) Unexplained, or inadequately explained, failure to seek treatment or follow up a prescribed course of treatment; and

(8) Ordinary techniques to test a claimant's credibility.

*Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); 20 C.F.R. §1529.

The ALJ partially accepted claimant's complaints of pain: "The undersigned concludes that the claimant's impairment could reasonably be expected to produce the pain and other symptoms alleged, however, the undersigned does not believe that his impairment would limit him to the extent that he alleges." (AR 22.) *Hardman v. Barnhart*, 362 F.3d 676 (10th Cir. 2004) (error for the ALJ to fail to expressly consider claimant's persistent attempts to find relief from his pain, his willingness to try various treatments for his pain, and his frequent contact with physicians concerning his pain-related complaints.)  The ALJ, here, adopted claimant's partial complaints of pain.

The ALJ considered ordinary techniques of credibility in rejecting claimant's full complaints of debilitating pain.  The ALJ stated that claimant's impairments can reasonably be expected to produce some of the pain and symptoms alleged, but the ALJ concluded that the alleged pain was not fully supported: "In reaching this conclusion, the undersigned has considered the claimant's own subjective allegations and testimony and has found them not credible." (AR 22.)

The ALJ relied upon the medical evidence in the record.  "The undersigned notes that initially the claimant improved rapidly following surgery." (AR 22.)  Claimant had fulll range of motion in flexion, extension and lateral rotation and lateral bending.  The ALJ noted the lack of significant findings

1  in the MRI and negative straight leg raising.  While subjective pain testimony cannot be rejected on the
2  sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still
3  a relevant factor in determining the severity of the claimant's pain and its disabling effects. *Rollins v.*
4  *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

5  The ALJ noted claimant's "functionality" and his basic independence at home. Plaintiff testified
6  that he shops, walks his dog, does light chores, watches TV six hours a day, and drinks four cases of beer
7  a week. These activities are consistent with an ability to perform light work. *See Curry v. Sullivan*, 925
8  F.2d 1127, 1130 (9th Cir. 1990) (An ability to take care of personal needs, prepare easy meals, do light
9  housework, and shop for some groceries is inconsistent with the presence of a condition which would
10 preclude all work activity.)  If a claimant engages in numerous daily activities involving skills that could
11 be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific
12 findings relating to those activities. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

13 The ALJ also notes the opinion of the qualified medical examiner, Dr. Lipton who opined that
14 "it would be reasonable if he swan" for treatment.  (AR 21-22.)

15 Here, the partially accepted the pain complaints but not the full extent of the disabling pain.  The
16 record supports a partial discrediting of claimant's testimony.  The ALJ supported his findings with
17 reference to the objective medical evidence.  "Credibility determinations are the province of the ALJ."
18 *Fair v. Bowen*, 885 F.2d at 604.  Thus, there is substantial evidence in the record to support  ALJ's
19 partial rejection of plaintiff's subjective complaints.

## Hypotheticals to the VE

21 Claimant argues that the hypothetical questions posed to the VE failed to incorporate all of
22 claimant's impairments. (Opening brief p.4.)

23 The Ninth Circuit has held "[t]he limitation of evidence in a hypothetical question is
24 objectionable only if the assumed facts could not be supported by the record." *Magallanes v. Bowen*,
25 881 F.2d at  757 (quotations omitted).  "Hypothetical questions posed to the vocational expert must set
26 out *all* the limitations and restrictions of the particular claimant . . ." *Embrey v. Bowen*, 849 F.2d 418,
27 422 (9th Cir. 1988) (italics in original) (assumptions in hypothetical must be supported by the record).
28 An ALJ may properly "limit a hypothetical to those impairments that are supported by substantial

evidence in the record." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). An ALJ may accept or reject restrictions in a hypothetical question and which are not supported by substantial evidence, even when there is conflicting medical evidence. *Osenbrock*, 240 F.3d at 1165; *see Magallanes*, 881 F.2d at 756-757.

The parameters of an ALJ's hypotheticals need not "include any alleged impairments that the ALJ has rejected as untrue." *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997). The ALJ simply did not include impairments which the ALJ found were non-severe. The ALJ properly found that other alleged impairments were non-severe and there fore not a restriction on basic work activities. Accordingly, the ALJ did not err in failing to include non-severe impairments in the hypotheticals.

## **CONCLUSION**

The Court finds no error in the ALJ's analysis. As such, the ALJ's decision is supported by substantial evidence in the Record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Bennett Roiz.

IT IS SO ORDERED.

**Dated:   December 1, 2005**            /s/ Lawrence J. O'Neill
b9ed48                                  UNITED STATES MAGISTRATE JUDGE